IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,                )
                                         )
              v.                         )
                                         )    1:13-cr-350 (LMB)
WILLIAM SYKES, a.k.a. "Black"            )
                                         )    1:16-cv-229 (LMB)
              Movant.                    )
                                         )
                                         )

MEMORANDUM OPINION

Before the Court is movant William Sykes'("movant" or "Sykes") Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody

("Motion to Vacate"), as well as a supplemental filing that appears to request a sentence

reduction for a "minor role of culpability" ("Minor Role Motion"), and a letter motion requesting

that six subpoenas be issued for discovery purposes ("Letter Motion"). The Motion to Vacate

has been fully briefed and the Court finds that neither oral argument nor an evidentiary hearing

would aid the decisional process. See Raines v. United States, 423 F.2d 526, 529 (1970)

(recognizing that a "full evidentiary hearing" is not required where "'the files and records of the

case conclusively show that the prisoner is entitled to no relief.'" (quoting 28 U.S.C. § 2255(b)).

The government has not replied to the Minor Role Motion or the Letter Motion but the Court

finds that no reply is necessary. For the reasons that follow, the Motion to Vacate will be

dismissed, and the remaining motions denied.

I.    BACKGROUND

On August, 29, 2013, a grand jury returned an indictment against Sykes and 23 other

defendants, all of whom were alleged to be members of the Nine Trey Gang, a street gang

associated with the United Blood Nation. On September 4, 2013, the Court appointed attorney Alan Yamamoto ("Yamamoto") to represent Sykes at trial and he also represented Sykes on appeal. The grand jury returned a superseding indictment [Dkt. 112] on September 26, 2013, alleging six counts against Sykes: conspiracy to commit racketeering in violation of 18 U.S.C. §§ 1962(d) and 1963(a) ("Count 1"); two counts of violence in aid of racketeering in violation of 18 U.S.C. § 1959(a) ("Counts 2 and 3"); use of a firearm during and in relation to a crime of violence ("Count 4"); conspiracy to distribute 280 grams or more of cocaine in violation of 21 U.S.C. §§ 841 and 846 ("Count 5"); and conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c) ("Count 9"). On February 10, 2014, the Court dismissed Counts 3 and 4 as to Sykes on the government's motion.

Sykes, along with two co-defendants, Thaddeus Snow ("Snow") and Jameel Aleem ("Aleem"), were the only defendants who went to trial. All the other defendants entered plea agreements, most of which included obligations to cooperate. The jury trial began on February 11, 2014, and lasted ten days, ending with the jury convicting Sykes on all four remaining counts: 1, 2, 5, and 9. In convicting Sykes on Count 1, the jury indicated on a special verdict form that it found his racketeering activity to include multiple acts of distribution of controlled substances, dealing in counterfeit obligations or securities, sex trafficking, and interstate transportation for prostitution, and for Count 2 the jury specified that maiming was the underlying act of violence. [Dkt. 600].

Before the sentencing hearing, the government filed an information under 21 U.S.C. § 851 which gave Sykes notice that he was facing an enhanced punishment because of a prior felony drug conviction in Virginia state court. [Dkt. 485]. The conviction on Count 5, in combination with the § 851 enhancement, meant that Sykes was facing a mandatory minimum of

20 years of imprisonment; however, his guideline range was 30 years to life. Pre-Sentence Report, [Dkt. 738] at 29. That guideline range included a 3-level enhancement for an aggravating role in the offense, although the probation officer concluded, and the Court agreed, that Sykes did "not qualify for a sentence enhancement under the Career Offender, Criminal Livelihood, Armed Career Criminal or Repeat and Dangerous Sex Offender sections, as defined in Chapter 4, Part B, of the Sentencing Guidelines." Id. at 44, 25. On May 9, 2014, the Court imposed a total sentence of 30 years of imprisonment, among other penalties.

Sykes and Snow filed a joint appeal. Although Snow raised a number of challenges, Sykes raised only one, arguing that the evidence was insufficient to support his conviction for conspiracy to distribute at least 280 grams of a substance containing cocaine base (Count 5). See United States v. Snow, 595 F. App'x 223, 226 (4th Cir. 2015). Specifically, Sykes argued that the drugs were "not attributable to him." Id. The Fourth Circuit disagreed, holding that the "record includes sufficient evidence that Sykes could reasonably have foreseen that the Nine Treys trafficked in 280 grams or more of cocaine base." Id. Accordingly, it affirmed his conviction and sentence. Id. Sykes petitioned the United States Supreme Court for certiorari, which was denied on April 20, 2015. Sykes v. United States, 135 S. Ct. 1864 (2015).

Sykes timely filed the Motion to Vacate, along with a memorandum in support ("memorandum" or "memo.") on March 2, 2016. The Motion to Vacate listed four numbered grounds for relief, which the supporting memorandum split into 15 numbered grounds. Because the memorandum's grounds are more specific, and incorporate all the arguments raised in the original Motion to Vacate, this memorandum opinion will refer to the numbering system from the memorandum unless otherwise specified. The government filed its opposition ("Gov. Opp."), which includes Yamamoto's affidavit, to which Sykes has replied.

3

## II.   DISCUSSION

### A. Legal Background

Section 2255 authorizes a federal prisoner to move the court to vacate a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).   If the prisoner has failed to raise a claim on direct appeal, he has procedurally defaulted that claim, barring him from raising it on collateral review unless he can show "cause excusing his . . . procedural default" as well as "actual prejudice resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 165–68 (1982) (internal quotation marks omitted).   With the exception of a sufficiency of the evidence challenge as to Count 5, all of movant's arguments are procedurally defaulted because he did not raise them on direct appeal.   See Snow, 595 F. App'x at 226.   As a result, he may not raise them now without demonstrating cause and prejudice.

As the cause for his procedural default, movant argues his appellate counsel was constitutionally ineffective.   To establish ineffective assistance of counsel, movant must show both that "counsel's performance was deficient" and that he was prejudiced by that deficient performance.   Strickland v. Washington, 466 U.S. 668, 687 (1984).   Deficient performance occurs when "counsel's representation [falls] below an objective standard of reasonableness" as established by "prevailing professional norms." Id. at 687–88.   Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence," and because a wide range of strategies may be legitimate in a given case, there is a "strong presumption" that counsel's conduct was effective and "scrutiny of counsel's performance must be highly deferential." Id. at 689–90; see also United States v. Terry, 366 F.3d 312, 316–18 (4th Cir. 2004).   In keeping with this standard, a court is to assess counsel's conduct not with the

4

benefit of hindsight, but from the perspective of counsel at the time of the relevant action or decision. Strickland, 466 U.S. at 689.  Further, courts acknowledge that the range of reasonable professional assistance is wide and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id.  Moreover, there can be no question that "counsel [is] not constitutionally ineffective" for failing to raise an argument if "it would have been futile for counsel to have done so[.]" Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000).

Similarly, appellate counsel is "not obligate[d] to assert all non-frivolous issues on appeal[.]" Fisher v. Lee, 215 F.3d 438, 457 (4th Cir. 2000).  A key function of appellate counsel is "to examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983).  "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751).

To show prejudice, a movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A showing that "the errors had some conceivable effect on the outcome of the proceeding" is not enough; a reasonable probability requires that the errors are "sufficient to undermine confidence in the outcome," id. at 693–94, or that the results of the proceeding were fundamentally unfair, Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).  Assessing prejudice "requires the court deciding the ineffectiveness claim to 'consider the totality of evidence before the judge or jury.'" Elmore v. Ozmint, 661 F.3d 783, 858 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 695).  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700.

5

Claims of ineffective assistance, like any other claims, must be pleaded with "specific facts to support a potential finding" in favor of the movant. Hunter v. United States, No. 2:05CR49, 2010 WL 6050751, at *9 (N.D. W. Va. Aug. 23, 2010). Because Sykes is pro se, the Court must construe his allegations liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, movant must still state "more than labels and conclusions." Giarratono v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

### B. Lack of Jurisdiction

In grounds 1 through 3, Sykes argues that Yamamoto was ineffective for failing to challenge the Court's jurisdiction. Movant apparently believes that the federal government's jurisdiction "only [c]onsists of Washington,Dc [sic] and a 10 mile perimeter outside Washington,Dc [sic]." Memo. 15. This belief is mistaken. Congress has conferred "original . . . exclusive" jurisdiction on federal district courts over "all offenses against the laws of the United States." 18 U.S.C. § 3231. As the Fourth Circuit has recognized, that is the "beginning and the end" of the subject-matter jurisdiction inquiry in criminal cases. United States v. Hartwell, 448 F.3d 707, 716 (4th Cir. 2006) (quoting Hugi v. United States, 164 F.3d 378, 380 (7th Cir. 1999) (internal quotation marks omitted)). To the extent movant challenges the Court's personal jurisdiction, it is well settled that "[p]hysical presence in the United States usually supplies the only necessary prerequisite for personal jurisdiction in federal criminal prosecution." United States v. White, 480 F. App'x 198, 194 (4th Cir. 2012). Consequently, because there was no meritorious basis upon which to challenge the Court's jurisdiction, Yamamoto cannot be faulted for failing to raise the issue, either at trial or on direct appeal. See United States v. Scull, 147 F.

App'x 749, 752 (10th Cir. 2005) ("Counsel was not ineffective for failing to raise meritless objections to the district court's subject-matter jurisdiction.").

### C. Sufficiency of the Evidence for Count 5

In grounds 4, 5, and 13, Sykes argues that his trial and appellate counsel failed to adequately raise the sufficiency of the evidence upon which his conviction on Count 5 rested. In particular, he argues that there was not enough evidence to push the relationship between Sykes and his co-defendants from buyer-seller to being co-conspirators. This issue was fully litigated before the Fourth Circuit on direct appeal, which held that the evidence was sufficient to sustain Sykes' conviction. Snow, 595 F. App'x at 226. An issue "fully considered" on direct appeal may not be re-raised "under the guise of collateral attack." Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); United States v. Linder, 552 F.3d 391, 397 (2009). Movant's challenges to his conviction on Count 5 therefore fail as well.

### D. Sufficiency of the Evidence as to Counts 1, 2, and 9

Sykes argues that Yamamoto failed to adequately raise the sufficiency of the evidence supporting Counts 1, 2, and 9 at trial and on appeal.[1] With respect to Counts 1 and 9, he argues that Yamamoto should have more vigorously disputed that Sykes' voice appeared on incriminating phone calls, in part by performing some sort of "voice analysis." Memo. 16. He also argues that if Yamamoto had obtained Sykes' incarceration records they would have proven he was in jail during the sex trafficking operation, which he contends would have exonerated him of that charge. Id.

Yamamoto's trial strategy was not constitutionally deficient. At trial, Sykes faced an onslaught of law enforcement and cooperating co-defendant witnesses, all of whom testified that

---

[1] These challenges appear at various points in grounds 6, 7, 11, 12, and 13.

he was involved in the racketeering acts alleged. See J.A. 1630–35.[2]  Yamamoto's decision to attack the credibility of those witnesses wholesale by focusing on their incentives to adopt the government's view, see id., rather than to nitpick particular pieces of evidence was reasonable. With respect to Sykes' incarceration record, Yamamoto has averred that he investigated this possibility and chose not to raise the issue because Sykes was not, in fact, incarcerated for the entire period in question. Yamamoto Aff., [Dkt. 996-1] at ¶ 7. Accordingly, Sykes has not demonstrated that Yamamoto's failure to raise these points was objectively unreasonable.

Nor can Yamamoto be faulted for failing to raise these arguments on appeal. Following a jury trial, the appellate court must consider the evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80 (1942). If, in that light, the evidence would permit "a reasonable finder of fact to accept [the verdict] as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt[,]" it will be sustained. United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). At trial, the government presented ample evidence Sykes was guilty of the offenses charged in Counts 1 and 9, including direct eyewitness testimony from multiple co-conspirators. See J.A. 1593–617. With the court of appeals viewing that evidence in the light most favorable to the government, it is highly unlikely that Sykes' convictions would have been overturned on appeal. He has, therefore, failed to demonstrate that he was prejudiced by Yamamoto's omission of these arguments on appeal.

As to Count 2, which charged him with violence in aid of racketeering, Sykes first argues that the jury used a shooting at a school as the underlying act of violence to convict him even though charges related to that shooting were dropped. There is no evidence in the record to

---

[2] References in this memorandum opinion to "J.A." are to the joint appendix submitted to the Fourth Circuit during movant's direct appeal. See [Dkt. 22-4], No. 14-4387 (4th Cir. Aug. 18, 2014).

support that contention. The violence at issue in Count 2 was the maiming of victim L.B. [Dkt. 112] at 25. The jury was instructed that to convict Sykes on Count 2 it had to find that he "did maim L.B.," J.A. 1697, and the jury reported on a special verdict form that it found that he had committed the crime of "maiming in aid of racketeering," [Dkt. 600]. The record therefore clearly demonstrates that the basis of the Count 2 conviction was Sykes' knife attack on L.B., not a shooting at a school. Yamamoto was accordingly not ineffective for failing to raise this erroneous argument.[3]

Sykes goes on to argue that Yamamoto failed to appropriately stress that L.B. changed her story, originally reporting that her injury was the result of an attack by "two girls" and only later saying that Sykes was the perpetrator. In fact, Yamamoto cross-examined L.B. on that very point and raised it again in closing argument. J.A. 184–85, 1634. Counsel therefore appropriately raised this issue at trial, but the jury was not persuaded. On appeal, this dispute about the witnesses' credibility would have to be viewed in the light most favorable to the government, making the challenge futile. See Burgos, 94 F.3d at 862; Oken, 220 F.3d at 269.

### E. Witness Relationships and Credibility

Sykes argues that Yamamoto failed to adequately challenge the credibility of the government's witnesses in a number of respects. First, in grounds 8 and 9, he argues that Yamamoto failed to probe the relationships among many of the witnesses, who Sykes asserts were related either by blood or by marriage. See Memo. 17. For the most part, Sykes has not described how these relationships might have affected those witnesses' testimony. The only potential prejudice he has alleged is that the witnesses hoped to "save eachother [sic] due to their Cooperation" and to help one another receive credit from the government. Memo. 17. In other

---

[3] For the same reason, Sykes' claims that the government failed to put on a witness to testify that he beat someone up at a trailer park is beside the point.

words, testifying for the government was a way for these witnesses to improve the odds that they and their associates would receive lighter sentences.

Yamamoto raised precisely this point during the trial. Indeed, the very first argument that he made during his closing argument was that "the government's witnesses for the most part were . . . individuals who were looking to reduce their multiyear sentences." J.A. 1630. Yamamoto supported this argument by pointing out the benefits of cooperation, rather than by obliquely discussing the nexus of relationships between the witnesses. This is precisely the kind of strategic decisionmaking considered appropriate under Strickland. 466 U.S. at 689. Moreover, Sykes has not demonstrated that he was prejudiced by Yamamoto's decision to focus on the direct benefits of cooperation rather than any relationships among the witnesses.[4]

In ground 14, Sykes identifies a laundry list of facts that he believes undermines the credibility of the government's witnesses. Memo. 19–20. Although he argues that Yamamoto "Failed to Properly Prepare for [and] Execute Competent Examination" of these witnesses, as the transcript shows, Yamamoto as well as co-counsel vigorously attacked all these witnesses and Sykes essentially admits this by citing to the transcript and exhibits from his trial. Id. To the extent that Sykes is arguing that his counsel should have placed greater emphasis on particular inconsistencies or asked more questions about certain topics, those are strategic decisions which counsel is entitled to make and Sykes has not presented sufficient evidence to overcome the "strong presumption" that Yamamoto's choices were reasonable. See Strickland, 466 U.S. at 689–90.

---

[4] In addition, counsel for Sykes' co-defendants cross examined many of the witnesses on their relationships, thereby placing that information before the jury, which obviously was not persuaded by that evidence, given that it convicted the co-defendants. See Yamamoto Aff. ¶ 11.

10

Finally, Sykes argues that Yamamoto was ineffective for failing to object after various government witnesses allegedly violated the Court's sequestration order by discussing their testimony in the case. He alleges that the custodial witnesses spoke while they were being transported to and from the courthouse and being held in the same "bullpen." Memo. 20–21. Although Yamamoto did not raise this issue at trial, co-defendants' counsel did. The Court responded that the possibility of such conversations was "certainly an area of cross-examination." J.A. 414. Yamamoto and other defense counsel cross-examined several witnesses about this issue. Two testified that they had spoken with each other but that their testimony was not influenced by those discussions. J.A. 610–11 (Tweedy); 1382–83 (McLean). Others simply testified that they had not spoken to other witnesses about their testimony. J.A. 432–33 (J. Yates); 1020–21 (Kerns); 1270–71 (N. Yates); 1284–85 (Holland). Moreover, throughout the trial, the Court routinely admonished witnesses not to discuss their testimony with others who had not yet testified. See, e.g., J.A. 195, 206, 348, 458, 499, 564, 738, 809, 863, 953, 993, 1093, 1113. The record demonstrates that this issue was fully addressed at trial, and Sykes has not alleged any specific influence that these discussions might have had on the outcome of the trial. Therefore, he has not demonstrated that Yamamoto failed to adequately probe this issue.

### F. Other Challenges

1. Severance

Sykes argues in ground 13 that Yamamoto was ineffective for failing to request that his trial be severed from the co-defendants. That argument fails because such a request would have been futile. See Oken, 220 F.3d at 269. The bar for severing the trials of co-defendants, particularly when charged with conspiracy offenses, is high. The Fourth Circuit requires a defendant to show that "actual prejudice" would result from a joint trial. United States v. Reavis,

11

48 F.3d 763, 767 (4th Cir. 1995). Even then, a court must consider whether "less drastic" measures, such as cross-examination or jury instructions, might mitigate the prejudice. See United States v. Cuong Gia Le, 316 F. Supp. 2d 330, 339–43 (E.D. Va. 2004). A case like Sykes', where three co-defendants were on trial for substantially overlapping criminal allegations, would not meet that bar, meaning Yamamoto was not ineffective for failing to raise it. Moreover, the Court gave clear instructions to the jury to consider the case against each defendant separately, as well as to consider the evidence as to each count separately. J.A. 1681.

### 2. Use of Unredacted Transcripts

Sykes argues in ground 13 that Yamamoto ought to have objected to the jurors being given certain unredacted transcripts of recorded phone calls during their deliberations. Although Sykes argues that the transcripts contained "incriminating evidence pertaining" to him, in fact those transcripts were about Snow, not Sykes. Snow, 595 F. App'x at 224–25; Yamamoto Aff. ¶ 15. Sykes therefore has not articulated how the jury's having those transcripts might have prejudiced him. Moreover, Snow raised this issue on appeal and the Fourth Circuit held that the information "could not have influenced the jury's decision" as to Snow. Snow, 595 F. App'x at 225. Accordingly, Sykes cannot demonstrate that he was prejudiced by his counsel's failure to address the unredacted transcripts.

### 3. Juror Discussions During Trial

In ground 13, Sykes alleges that Yamamoto should have argued for a mistrial because the jury improperly discussed the case before the conclusion of the trial.[5] He appears to be referring to an incident on the third day of the trial when a juror sent the Court a note saying there were "[t]oo many questions and discussion" in the juror room. Yamamoto Aff. ¶ 16. In response to

---

[5] In fact, Yamamoto along with co-counsel did file a joint motion for a mistrial on this basis at the trial level, which was denied. See J.A.1766–67.

that note, the Court admonished the jury not to "be talking among [themselves]" about the case or "deliberating ahead of time." J.A. 605. Snow raised this issue on appeal and the Fourth Circuit held that the corrective instruction "properly addressed this issue" and that the Court "did not abuse its discretion by declining to order a new trial on that basis." Snow, 595 F. App'x at 225. Accordingly, Sykes was not prejudiced by this omission.

### 4. Enhancement under 21 U.S.C. § 851

Sykes argues in ground 13 that Yamamoto failed to raise the "Simmons Law Elements" when the government filed an information under 21 U.S.C. § 851 to enhance his punishment based on Sykes having a prior felony drug conviction. Memo. 18. Sykes has not provided the Court with a citation for "Simmons," but presuming that he is referring to United States v. Simmons, 649 F.3d 237 (4th Cir. 2011), the case is inapplicable to his circumstances. When determining whether a prior drug conviction may serve as the basis for an enhancement under § 851, the court must determine whether the prior offense is a "felony drug offense." 21 U.S.C. § 841(b)(1)(A). "Felony drug offense," in turn, is defined as "an offense punishable by imprisonment for more than one year[.]" 21 U.S.C. § 802(44). In Simmons, the court had to determine whether a North Carolina defendant had been convicted of an offense "punishable by imprisonment for a term exceeding one year" if the defendant could only have received a sentence that long by the hypothetical application of a sentencing enhancement. See 649 F.3d at 243. Here, there is no similar question. Sykes actually received a sentence of 10 years of imprisonment on the Virginia offense that was the predicate for his § 851 enhancement. [Dkt. 485]. Clearly, his offense was punishable by more than one year of imprisonment.

13

Accordingly, Yamamoto was not ineffective for failing to raise a challenge to the application of § 851 under Simmons.[6]

### 5. Counsel's Conflict of Interest

Sykes has asserted that Yamamoto had a conflict of interest because he "violated [movant's] Presumption of Innocenses [sic] Counsel helped the Government satisfy the elements to convict Petitioner of all counts of the Superseding Indictment Petitioner requested for Councel to retrieve certain evidence that would prove his Innocence after the fact he already shifted the burden to Petitioner." Memo. 17.[7] This bald allegation falls well short of the specificity required to successfully plead that defense counsel had any conflict of interest. See Giarratono, 521 F.3d at 304 n.5. The record does not indicate that Yamamoto shifted the burden to Sykes or waived the presumption of innocence on his behalf. Accordingly, this ground for relief fails as well.

### G. Minor Role Motion

Sykes has also filed a document captioned "Minor Role of Culpability," which mostly recites his concerns about the credibility of the government's witnesses, but also might be construed as requesting a reduced sentence pursuant to 18 U.S.C. § 3582. Section 3582(c)(2) permits a court to reevaluate its sentence if the "sentencing range . . . has been subsequently lowered by the Sentencing Commission[.]" Although Sykes has not identified the amendment,

---

[6] In his Letter Motion, Sykes argues that he was sentenced as a "career offender" and that he needs to be resentenced in light of United States v. Welch and United States v. Beckles. Sykes is mistaken. The probation office found that he did "not qualify for a sentence enhancement under the Career Offender, Criminal Livelihood, Armed Career Criminal or Repeat and Dangerous Sex Offender sections." Pre-Sentence Report, [Dkt. 738] at 25. Accordingly, none of the recently decided or pending cases addressing the career offender sentencing provisions are applicable to him.

[7] This quotation is reproduced as it appears in movant's Memorandum.

14

in November 2015 the Sentencing Commission adopted Amendment 794. That amendment changed the commentary to U.S.S.G. § 3B1.2 to eliminate language that might have been discouraging courts from granting a reduction for an offender who played only a "minimal" or "minor" role in the offense. See U.S.S.G. App. C Amend. 794. Amendment 794 was not designated for retroactive application by the Sentencing Commission and therefore cannot be applied to Sykes. See United States v. Goines, 357 F.3d 469, 474 (4th Cir. 2004). Even if it did apply, under the facts in this record, Sykes would not have qualified for any role reduction. Accordingly, the Minor Role Motion will be denied.

### H. Letter Motion for Discovery

Finally, Sykes has filed a letter requesting six subpoena forms. That request will be denied because he has not adequately pleaded any ground for relief under § 2255, and there is no basis for an evidentiary hearing or subpoenas.

### III.  CONCLUSION

For the reasons stated above, the Motion to Vacate will be dismissed and the Minor Role Motion and Letter Motion will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 23rd day of November, 2016.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge